IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WADE CLARK and JOHN PORTER,         )
                                    )
       Plaintiffs,                  )
                                    )   CIVIL ACTION
v.                                  )
                                    )   Case No. 08-2620-CM
K&G MEN'S COMPANY, INC.,            )
                                    )
       Defendant.                   )
_____)

# MEMORANDUM AND ORDER

Wade Clark and John Porter, the remaining plaintiffs in this action, bring this case pursuant to 42 U.S.C. § 1981. Plaintiff Clark claims that defendant K&G Men's Company, Inc. ("K&G") terminated his employment because of his race. Plaintiff Porter claims that defendant subjected him to a racially hostile work environment and discriminated against him based on his race. The case is pending before the court on defendant K&G Men's Company Inc.'s Motion for Summary Judgment (Doc. 53).

## I. FACTUAL BACKGROUND[1]

### A. Background Information

Plaintiffs are African-Americans who worked for defendant K&G from early October 2007 through May 2008. Plaintiff Clark was terminated; plaintiff Porter resigned. Both plaintiffs worked in defendant's retail store part-time.

In early 2008, Matt Cordell became defendant's Store Manager. Tyson McQuay has been an

---

[1] The court construes the facts in the light most favorable to plaintiffs as the non-moving parties pursuant to Fed. R. Civ. P. 56. The court has included only those facts which are relevant, material, and properly supported by the record. All facts may not be mentioned in the factual background, but may be included as necessary within the discussion of plaintiffs' claims.

Assistant Manager for defendant K&G since February 2006. Deana Schwery worked as an Assistant Manager for defendant K&G from April 2007 through October 2008. Assistant Managers lack authority to hire or fire employees.

There were at least nine African-American employees working at defendant K&G's Overland Park store during plaintiffs' employment. All African-American employees were part-time. Caucasian employees held the five full-time positions. A majority of all customers at defendant K&G are African-American males, and approximately seventy percent of customers are racial minorities.

**B. Plaintiff Clark's Termination for Theft**

Defendant K&G's Code of Conduct prohibits the removal or attempted removal of merchandise from the store without paying for it. Plaintiff Clark took a new pair of K&G shoes, put them on, and walked out of the store to take a break without purchasing the shoes. When he returned to work, Mr. Cordell called him into the office to discuss the situation. Mr. Cordell believed plaintiff Clark's actions rose to the level of employee theft. This was the only instance of its kind that Mr. Cordell was involved with. A Caucasian employee, Jesse Kangas, wore a store tie out of the store once, but if Mr. Kangas did not purchase the tie first, Mr. Cordell was unaware that he failed to purchase it. Mr. Kangas was not terminated.

Regional Loss Prevention Investigator Gregg Greer interviewed plaintiff Clark that day by phone about taking the shoes. Mr. Cordell was present as a witness. At the conclusion of the interview, plaintiff Clark provided a handwritten statement that said he took the pair of shoes from the store and that he would pay for the shoes at the end of his shift. Plaintiff Clark never paid for the shoes.

Mr. Greer (an African-American) recommended plaintiff Clark's termination for removing merchandise from the store without paying for it. Defendant K&G's Director of Human Resources, Lori Robinson (also an African-American), approved plaintiff Clark's termination.

## C. Plaintiff Clark's Claims Against the Company

In his deposition, plaintiff Clark listed a number of ways that he believed Mr. Cordell and Mr. McQuay discriminated against him. Half of the allegations pertain to Mr. McQuay's conduct. Mr. McQuay was not involved in plaintiff Clark's termination, making those allegations immaterial to the issues before the court. Considering only the allegations involving Mr. Cordell, who was involved to some extent in plaintiff Clark's termination, plaintiff Clark alleges that (1) he was not trained properly; (2) his managers left him alone in the department; (3) management rehired a former employee instead of giving additional hours to plaintiff Clark; and (4) Mr. Cordell accused plaintiff Clark of theft.

Ms. Schwery testified in deposition that part-time employees complained about how the hours were divided among the employees. She also said that the complaints came from every employee.

## D. Plaintiff Porter's Claims Against the Company

Plaintiff Porter claims the following individuals discriminated against him: (1) Mr. Cordell; (2) Mr. McQuay; (3) Ms. Schwery; and (4) Derek – last name unknown.

Plaintiff Porter claims that Ms. Schwery discriminated against him because: (1) she asked a customer to show her a sales receipt after the customer triggered the store's alarm when leaving; (2) she asked plaintiff Porter to follow a group of young, male African-American customers who wore "sagging pants"; (3) there were occasions when plaintiff Porter was helping a customer and management paged him to help at the cash register as a cashier; and (4) Ms. Schwery made him wait

to take breaks until Derek, the other cashier, returned from his breaks.

Plaintiff Porter claims that Mr. Cordell discriminated against him because (1) he asked plaintiff Porter to follow customers with "sagging pants" and (2) he transferred plaintiff Porter from the position of a suit salesman to cashier.

Employees are paid an hourly wage and do not receive commissions based upon the number of suits sold. In other words, plaintiff Porter was paid the same amount regardless of whether he sold suits. Mr. Cordell testified that he reassigned plaintiff Porter to work as cashier (also called a "Customer Service Representative"), which Mr. Cordell termed a "lateral move," because he felt plaintiff Porter needed more structure and supervision. When working on the sales floor, plaintiff Porter frequently disappeared, spent time in other areas of the store, or was not assisting customers.

Plaintiff Porter claims that Mr. McQuay discriminated against him because: (1) he asked him to follow customers with "sagging pants"; (2) in response to a customer buying jeans with the word "Fubu" on it, Mr. McQuay said "black people" would buy jeans if the word "ghetto" were written on them; and (3) Mr. McQuay discarded the applications of three African-American applicants because one was not well-dressed, one was "slow," and he did not meet the third applicant.

**E. Immaterial Facts**

Missing from the facts summarized above are nearly all of the facts that plaintiffs propose in their response to defendant's summary judgment motion. The court did not overlook these proposed facts. Rather, the court determines that they are immaterial to the issues before the court. Plaintiffs submit substantial evidence suggesting that defendants' employees and supervisors acted in a racially discriminatory or offensive manner on various occasions. Plaintiffs argue that this evidence shows that defendant took actions on the basis of race and that a hostile work environment existed.

The problem with an overwhelming number of plaintiffs' proposed facts is that the incidents

-4-

occurred out of the presence of plaintiffs and/or at a time when plaintiffs did not work for defendant. While there might be *some* circumstances in which these facts could be relevant and probative, the court does not find those circumstances here. Instead, for the reasons stated below, the court determines that plaintiffs cannot establish a prima facie case of discrimination or hostile work environment. In this case, evidence of treatment of other employees outside the presence of plaintiffs, and by supervisors and employees not involved in the decisions at issue, is not relevant to whether defendant discriminated against plaintiffs or subjected plaintiff Porter to a hostile work environment. The immateriality of these facts results in plaintiffs' case being dismissed.

## II. STANDARDS FOR JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

### A. Plaintiff Clark's Claim for Wrongful Termination

To determine whether plaintiff Clark can survive summary judgment on his termination claim, the court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Under *McDonnell Douglas*, plaintiff Clark must first establish a prima facie case of racial discrimination. If plaintiff Clark carries that burden, defendant must then articulate a facially nondiscriminatory reason for the challenged employment action. *Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998) (citations omitted). If

defendant makes such a showing, the burden reverts to plaintiff Clark to prove the proffered nondiscriminatory reason is pretextual. *Id.* (citations omitted).

A prima facie case is a flexible standard, adjusted to fit "the context of the claim and the nature of the adverse employment action alleged." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). Generally speaking, to establish a prima facie case of race discrimination, a plaintiff must prove: (1) he is a member of a protected class; (2) he qualified for the position or was doing satisfactory work; (3) he was terminated; and (4) the termination occurred under circumstances giving rise to an inference of unlawful discrimination. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 (10th Cir. 2007) (quoting *Plotke*, 405 F.3d at 1100).

Here, the question centers on whether plaintiff Clark can show that his termination occurred under circumstances giving rise to an inference of unlawful discrimination. He cannot. Plaintiff Clark violated company policy by wearing unpurchased store shoes out of the store. He does not allege that the decisionmakers, Gregg Greer and Lori Robinson, acted in a discriminatory manner. In fact, both Mr. Greer and Ms. Robinson are African-Americans. Instead, plaintiff Clark attempts to use a "cat's paw" theory, claiming that Mr. Cordell tainted the process with his own bias toward plaintiff Clark.

But this theory does not work here. Plaintiff makes four allegations that Mr. Cordell acted with discriminatory intent: (1) plaintiff was not trained properly; (2) plaintiff's managers left him alone in the department; (3) management rehired a former employee instead of giving additional hours to plaintiff Clark; and (4) Mr. Cordell accused plaintiff Clark of theft. All of plaintiff's other allegations involve Mr. McQuay, who was not involved in his termination. The only relevant evidence plaintiff Clark has presented that relates directly to his termination is the fact that Mr. Cordell accused him of theft. This does not, however, infer discriminatory intent. Plaintiff admits

that he walked out of the store wearing shoes that he had not bought. Plaintiff's evidence is insufficient to survive summary judgment.

Plaintiff also attempts to show discriminatory intent by arguing that Jesse Kangas and Tom Towe were similarly-situated Caucasian employees who were not terminated after engaging in similar conduct. Neither, however, engaged in similar conduct of which any of the decisionmakers was aware. While Patti Talcum stated in a declaration that, based on her observations, Mr. Kangas did not purchase the tie before leaving the store, defendant also presented uncontroverted evidence that Mr. Cordell was not aware of any other employee leaving the store wearing unpurchased merchandise. Plaintiff presents no evidence suggesting that Mr. Cordell or either of the decisionmakers knew that Mr. Kangas left the store without purchasing the tie. And Mr. Towe was a Store Manager who allegedly disposed of several pairs of shoes. Plaintiff Clark has not presented evidence suggesting that either of the decisionmakers for his termination were aware of Mr. Towe's actions.

The court grants summary judgment on Plaintiff Clark's claim.

## B. Plaintiff Porter's Claim for Discrimination

To determine whether plaintiff Porter can survive summary judgment on his discrimination claim, the court again applies the burden-shifting framework set forth in *McDonnell Douglas Corp.* To establish a prima facie case of disparate treatment, plaintiff Porter must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) that action occurred under circumstances creating an inference of discrimination. *Hysten v. Burlington N. & Santa Fe R.R. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002). If plaintiff Porter carries that burden, defendant must then articulate a facially nondiscriminatory reason for the challenged employment action. *Id.* (citations omitted). If defendant makes such a showing, the burden reverts to plaintiff

Porter to prove the proffered nondiscriminatory reason is pretextual. *Id.* (citations omitted).

*1. Adverse Employment Action*

It is undisputed that plaintiff Porter belongs to a protected class. The court therefore turns to whether he suffered an adverse employment action. Plaintiff Porter claims that he suffered two adverse employment actions: (1) his transfer from selling suits to working as a cashier; and (2) management's rejection of his request for additional hours. The Tenth Circuit takes a case-by-case approach in considering whether certain actions constitute adverse employment actions. *See Trujillo v. N.M. Dep't of Corrs.*, No. 98-2143, 1999 WL 194151, at *2 (10th Cir. Apr. 8, 1999). Generally, conduct qualifies as an adverse employment action if it "constitutes a significant change in [the plaintiff's] employment status." *Hertenstein v. Kimberly Home Health Care, Inc.*, 58 F. Supp. 2d 1250, 1260 (D. Kan. 1999). Examples include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Dunlap v. Kan. Dep't of Health & Env't*, 211 F. Supp. 2d 1334, 1342 (D. Kan. 2002) (citing *Burlington v. Ellerth*, 524 U.S. 742 (1998)); *see also Juarez v. Utah*, 263 F. App'x 726, 737 (10th Cir. 2008).

Mr. Cordell testified that plaintiff Porter's transfer was a lateral transfer. Plaintiff Porter attempted to controvert this fact by citing testimony that when he was a suit salesperson, he would be with customers, "helping them find a suit." The court finds this evidence insufficient to create a genuine issue of material fact as to whether a transfer from suit salesperson to cashier was a lateral transfer. Other evidence in the record indicates that the pay was the same for the positions. Moreover, plaintiff Porter continued doing retail work in the same store—providing assistance to customers. While plaintiff Porter may have preferred to sell suits, his negative view of the transfer does not make the transfer an adverse employment action. *Sanchez v. Denver Pub. Sch.*, 164 F.3d

-8-

527, 532 n.6 (10th Cir. 1998) ("If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer adverse employment action.") (citation omitted).

The court further determines that management's denial of plaintiff Porter's request for additional hours was not an adverse employment action. Significantly, plaintiff Porter does not allege that management reduced his hours. *Cf. O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (acknowledging that the parties did not dispute that a reduction in hours constituted an adverse employment action). A denial of a scheduling change request does not constitute an adverse employment action. *Hardman v. Autozone, Inc.*, No. 02-2291-KHV, 2003 WL 22462507, at *6 (D. Kan. Sept. 5, 2003) (new trial granted on other grounds) (citations omitted). "[N]ot everything that makes an employee unhappy is an actionable adverse employment action." *Anderson v. Clovis Mun. Sch.*, 265 F. App'x 699, 705 (10th Cir. 2008).

*2. Inference of Discrimination*

Even if plaintiff were able to show that he had suffered from adverse employment actions, he cannot demonstrate that the circumstances of the actions give rise to an inference of discrimination. With respect to plaintiff's transfer, Mr. Cordell was responsible for the transfer. As noted above, the only evidence plaintiff Porter has presented to suggest that Mr. Cordell acted with racial animosity was that he asked plaintiff Porter to follow customers with baggy pants. This allegation is insufficient to create an inference of discrimination.

Neither does an inference of discrimination arise with respect to management's failure to give plaintiff Porter additional hours. Ms. Schwery testified that all employees wanted more hours. Management received additional hours from corporate to hire a new employee, not to distribute

among current employees. The new employee was of Cuban descent. And although plaintiff Porter did not receive more hours, Mr. Jenkins, who is African-American, testified that he did receive additional hours. Under these facts, the court cannot find that plaintiff has created a triable issue for the jury.

**C. Plaintiff Porter's Claim for Hostile Work Environment**

To prevail on his hostile work environment claim, plaintiff Porter must establish that his work environment was hostile and that defendant is liable for the hostile environment. *Adler*, 144 F.3d at 672–73. The court determines whether a hostile work environment exists by "look[ing] at all circumstances, to see if the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of the plaintiff's employment." *Juarez*, 263 F. App'x at 739 (citation and internal quotation marks omitted). To the extent that a plaintiff is subjected to a hostile work environment, it must be as a result of his protected class. *Id.* (citation omitted); *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) ("General harassment if not racial or sexual is not actionable.").

Here, plaintiff Porter makes many allegations of harassment. Some of the comments made by Mr. McQuay are, if true, disturbing. The court has not repeated them here because they were not made in plaintiff Porter's presence or even brought to plaintiff Porter's attention while he was employed by defendant K&G. In many cases, Mr. McQuay's comments were made after plaintiff Porter was no longer employed by defendant K&G.

This is the overriding problem with plaintiff Porter's allegations. Where an employee is unaware of comments or conduct during his employment, they are not part of his work environment. *See Turnbull v. Topeka State Hosp.*, 185 F.R.D. 645, 650 (D. Kan. 1999) ("If plaintiff is unaware of such harassment, she has no claim; it has not affected her personally."). Considering only the

actions and comments that were part of plaintiff Porter's work environment, the court is left with the following incidents: (1) management asked plaintiff Porter to follow African-American customers with "sagging pants"; (2) Ms. Tuter placed clothing in the dressing room so that plaintiff would have to pick it up during his shift; (3) Mr. McQuay accused plaintiff Porter of selling merchandise below retail to African-American customers and had someone watch over him to see what he was doing; (4) Mr. McQuay discarded the employment applications of three African-American applicants, despite store policy that provided applications should be kept for one year; and (5) in response to a customer buying jeans with the word "Fubu" on it, Mr. McQuay said "black people" would buy jeans if the word "ghetto" were written on them.

These actions fall short of creating a workplace "permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of the plaintiff's employment." *See Juarez*, 263 F. App'x at 739 (citation and internal quotation marks omitted). While Mr. McQuay's comment about Fubu jeans reflects poor taste, it is an isolated comment (of which plaintiff Porter was aware) over the course of eight months. "[I]solated incidents of harassment, while inappropriate and boorish, do not constitute pervasive conduct." *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1414 (10th Cir. 1997) (citing *Bolden*, 43 F.3d at 551); *see also Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2008) (quoting *Bolden*, 43 F.3d at 551) ("A plaintiff cannot meet [his] burden by demonstrating 'a few isolated incidents of racial enmity' or 'sporadic racial slurs.'"). Moreover, with respect to Ms. Tuter's action, the record contains no evidence suggesting that her prank was racially-motivated. Plaintiff Porter cannot establish a triable case of hostile work environment.

**IT IS THEREFORE ORDERED** that defendant K&G Men's Company Inc.'s Motion for Summary Judgment (Doc. 53) is granted.

Dated this 6th day of January 2010, at Kansas City, Kansas.

> **s/ Carlos Murguia**
> **CARLOS MURGUIA**
> **United States District Judge**